**HUMBLE OIL & REFINING CO. v. STEWART OIL CO. et al.**

No. 9981.

Court of Civil Appeals of Texas. Austin.

June 27, 1951.

Rehearing Denied July 18, 1951.

Rex G. Baker, Nelson Jones, W. J. Merrill, all of Houston, Powell, Wirtz & Rauhut, by J. A. Rauhut, Austin, for appellant.

Price Daniel, Atty. Gen., Charles E. Crenshaw, Asst. Atty. Gen., by Charles E. Crenshaw, Austin, for Railroad Commission of Texas.

W. Dewey Lawrence, Tyler, J. W. Wheeler, by J. W. Wheeler, Austin, for Leo Bell and Paul Miller, appellees.

HUGHES, Justice.

This is a Rule 37 case in which all the facts were stipulated. They are:

On October 9, 1922, E. B. Alford acquired title by deed to a 73 plus acre tract of land in Rusk County.

On April 17, 1916, J. P. Maxwell acquired title by deed to a 200-acre [1] tract of land in Rusk County.

The Alford and the Maxwell tracts adjoined; the Alford east line being the Maxwell west line.

The tract immediately in issue is a .95-acre tract out of the S. E. corner of the Alford tract. This tract lay outside the Alford fence and was enclosed by Maxwell's fence since 1916. Maxwell perfected ten-year limitation title to this .95-acre tract in 1926.

Leo Bell and Paul Miller, on August 17, 1946, acquired an oil and gas lease on the .95-acre tract. Stewart Oil Company at one time held an interest in this lease but it has been reassigned to Bell. Stewart has filed a disclaimer herein. Prior to relinquishment of its interest Stewart filed with and the Railroad Commission granted an application for a permit to drill well No. 1 on the .95-acre tract, and appellant, Humble Oil and Refining Company, filed this suit against Bell, Miller

1. A 6-acre tract of this tract was sold but this fact has no bearing on this controversy.

and the Railroad Commission to vacate such order.

On April 11, 1925, Maxwell leased, for oil and gas development, his 194-acre tract; the .95-acre tract not being included. This lease expired prior to July 22, 1930.

On November 20, 1929, Maxwell conveyed to E. C. Laster an undivided mineral interest in the 194 acres, not including the .95-acre tract, such conveyance being subject to the lease described in the preceding paragraph.

On July 22, 1930, Maxwell leased for oil and gas development the south 150 acres of the 194-acre tract, and on February 14, 1931, Laster executed a similar lease, neither lease including the .95-acre tract.

The lands involved are in the East Texas Oil Field which was discovered in September 1930.

Other stipulations are to the effect that no well can be drilled on the .95-acre tract without violating the spacing rules of the Railroad Commission and such tract could have been developed with and as a part of either the Alford or Maxwell tracts by wells drilled in compliance with such rules, and further that a well on such tract is not required to prevent waste.

The parties further agreed: · "In the light of the foregoing undisputed facts it is agreed that if plaintiff establishes that the .95 acre tract was created by voluntary subdivision which was illegal under the conservation laws and rules (i. e., one which is required to be disregarded in determining the rights to a permit to prevent confiscation of property), plaintiff shall be entitled to prevail in this suit, otherwise defendants shall be entitled to prevail; it being the intention to narrow the issue to the question of law whether the .95 acre is such a subdivision."

The trial court made no separate conclusions of law but rendered judgment that appellant take nothing by its suit.

Appellant's single point is the error of the trial court in not holding that the .95-acre tract· is such a subdivision as must be disregarded in determining whether· the permit was necessary to prevent confiscation.

Appellees' counter point reads: "The trial court was correct in upholding the permit to drill on the Maxwell .95 acre tract because the tract was acquired in its present size and shape for purposes other than oil and gas development in 1926, four years prior to the discovery of oil in the East Texas Field, and has never been under common ownership with Maxwell's other property."

Excluding the 1925 mineral lease from consideration there would be no question but that the failure to include the .95-acre tract in the 1929 mineral deed and in the 1930 oil lease constitutes voluntary subdivisions looking to mineral development which would prevent the .95-acre tract from thereafter being· devloped as a separate tract in order to prevent confiscation. Stewart v. Smith, 126 Tex. 292, 83 S.W.2d 945; Nash v. Shell Petroleum Corporation, Tex.Civ.App., 120 S.W.2d 522, (Austin, Writ Dis.).

Appellees, however, say that application of these decisions is precluded by the fact that the 1925 oil lease was made before it acquired title to the .95-acre tract, and that the 1929 mineral deed was made before the 1925 lease had expired, and that the 1930 lease was made while the 1929 mineral deed was in effect.

We assume, but do not decide, that the 1925 lease did not constitute a voluntary segregation of the .95-acre tract because at that time title to such tract had not been perfected by adverse possession.

This lease expired prior to the execution of the 1930 lease, and it is the execution of this latter lease which we believe resulted in the segregation condemned by· the conservation rules.

The only reason appellees advance against this conclusion is that when the 1930 lease was made the owner of the .95-acre tract was not, because of the mineral deed to Laster, the ·full owner of the 194-acre tract.

Appellees cite no authorities in support of this argument.

We have found no case directly in point but are satisfied that, upon principle, the contention of appellees is unsound.

In Stewart v. Smith, [126 Tex. 292, 83 S.W.2d 947] supra, the court quoted with approval from the opinion of this court in the same case the following: "In no event could Stewart and Hart, by partition or otherwise, in August, 1933, in the face of rule 37 as then amended, by their own acts create a condition which would vest in them any right to an exception to said rule. To permit them to do so would, as we have already observed, set at naught rule 37 and the conservation laws of the state."

To the same effect is Empire Gas & Fuel Co. v. Railroad Commission, Tex. Civ.App., 94 S.W.2d 1240 (Austin C.C.A. Writ Ref.).

In Texas Jurisprudence, Vol. 31a, page 708, many cases are cited in support of the following statement: "Where a situation that would circumvent the rule is created by the voluntary act or connivance of the parties after the rule has attached to the property, such situation cannot be asserted as a valid ground for exception to the rule."

But for the execution of the mineral deed to Laster there would have been common ownership of the 194-acre tract and the .95-acre tract in Maxwell when the 1930 lease was made.

The execution of this deed by Maxwell in 1929 was a voluntary act subject to regulation by and control of the conservation rules of the Railroad Commission. Such act, therefore, cannot, under the above authorities, be held to create a condition which can be asserted as a valid ground for an exception to such rules.

The judgment of the trial court is reversed and judgment is here rendered cancelling the permit to drill on the .95-acre tract and granting the injunctive relief prayed for by appellant.

Reversed and Rendered.