RAILROAD COMMISSION OF TEXAS et al., Appellants,

v.

CONTINENTAL BUS SYSTEM, INC. et al., Appellees.

No. B–9710.

Supreme Court of Texas.

May 13, 1981.

Rehearing Denied June 17, 1981.

Mark White, Atty. Gen., Phyllis B. Schunck, Asst. Atty. Gen., Robinson, Felts, Starnes & Latting, Phillip Robinson, Austin, Kelley, Looney & Alexander, Rogers Kelley, Edinburg, for appellants.

Rogers, Ehrle & Hughes, Timothy J. Herman and Johnnie B. Rogers, Austin, Phinney, Hallman, Pulley & Coke, Leroy Hallman, George W. Hanthorn, Dallas, Timothy J. Herman, Austin, for appellees.

RAY, Justice.

This is a direct appeal by Valley Transit Company, Inc., Valley Bus Company, Inc. and the Railroad Commission of Texas from a judgment of the district court permanently enjoining orders of the Railroad Commission. Continental Bus System, Inc. and its affiliate Union Bus Lines, Inc. brought suit in the 200th District Court of Travis County pursuant to Section 17 of the Motor Bus Act, article 911a, § 17[1] and section 20 of the Motor Carrier Act, article 911b, § 20. Continental and Union sought to set aside as invalid, and permanently to enjoin orders of the Railroad Commission granting applications to amend Motor Bus Certificate of Convenience and Necessity No. 252 and Common Carrier Certificate of Public Convenience and Necessity No. 3991. The certificates belong to Valley Bus which leases them to Valley Transit. The district court rendered judgment for Continental and Union. We reverse that judgment.

On June 5, 1973, Valley Transit, joined by Valley Bus, applied to the Railroad Commission for authority to transport passengers, mail, newpapers, parcels, and express packages between Edinburg and San Antonio. The proposed route was to be over U.S. Highway 281 and would serve no intermediate points between Edinburg and San Antonio. This service would coordinate with Valley Transit's existing services in the Lower Rio Grande Valley.

Continental and Union opposed the applications. Union is authorized to perform motor bus and motor bus express service over U.S. Highway 281 between Edinburg and San Antonio by "local" schedules or by faster "express" or "through" schedules, or by a combination of both types of schedules. For many years Union has only offered "local" service over the route in question.

---

1. All statutory references are to Vernon's Texas Civil Statutes Annotated.

The hearing examiner for the Railroad Commission recommended that the authority sought by Valley Transit and Valley Bus be granted. The Railroad Commission heard oral arguments on March 8, 1975. On April 25, the Commission granted the application of Valley Transit and issued amended certificates to Valley Bus.

Continental and Union filed this suit against the Railroad Commission and Valley Transit on May 21, 1975. They complained primarily of the lack of substantial evidence to support the April 25, 1975 orders. The Railroad Commission and Valley Transit filed a plea in abatement urging that Valley Bus was a necessary party to the suit. On July 17, Continental and Union filed their First Amended Original Petition adding Valley Bus as a defendant. The First Amended Original Petition also added the allegations that the April 25 orders were invalid because they failed to name the real party in interest, Valley Bus, and because they were issued without proper notice under the Open Meetings Act, Article 6252–17. The Railroad Commission, alerted by the amended petition, issued orders dated August 6, 1975 granting the applications of Valley Bus. Continental and Union filed their Second Amended Original Petition on October 17, complaining of both the April 25 and August 6 orders.[2]

The district court heard the case on its merits on September 7 and October 22, 1976. On June 30, 1980, the final judgment set aside the Railroad Commission orders as invalid, and permanently enjoining Valley Transit and/or Valley Bus from conducting further intrastate operations under those orders. The district court stayed the permanent injunction pending final decision on appeal.

Appellants level three arguments against the judgment of the trial court. Appellants claim the trial court erred because:

(1) the Commission orders contain all requisite findings of fact and are reasonably supported by substantial evidence;

(2) the Commission possessed jurisdiction to consider and enter its August 6, 1975 orders granting the applications of Valley Bus;

(3) the Commission issued its August 6, 1975 orders in compliance with the requirements of the Open Meetings Act, Article 6252–17;

We sustain all three of the appellants' points.

### Substantial Evidence

■ The substantial evidence rule is the standard for judicial review of administrative orders. The court may reverse and render or reverse and remand the administrative decision if it is not reasonably supported by substantial evidence on the agency record, or if it is apparent that the agency action was arbitrary or an abuse of discretion. *Railroad Commission of Texas, et al. v. Entex, Inc.*, 599 S.W.2d 292, 298 (Tex.1980); *Southwestern Bell Tel. v. Public Utility Comm'n*, 571 S.W.2d 503, 512 (Tex.1978). The validity of an administrative order under the substantial evidence rule must be determined by the findings of fact upon which the order is based. *Auto Convoy Co. v. Railroad Commission*, 507 S.W.2d 718 (Tex.1974); *Morgan Drive Away, Inc. v. Railroad Commission*, 498 S.W.2d 147 (Tex.1973). Section 3 of Article 911a provides:

It is hereby declared that when existing transportation facilities on any highway in this State do not provide passenger service which the Commission shall deem adequate to provide for public convenience on such highway, then such inadequacy of service shall be considered as creating a condition wherein the public convenience and necessity require the designation of, and provision for, additional service on such highway, and it shall be the duty of the Commission to issue certificate or certificates as herein provided, if in the opinion of said Com-

---

**2.** We note that this direct appeal arose before January 1, 1976, the effective date of the Administrative Procedure and Texas Register Act, Article 6252–13a.

mission the issuance of such certificate will promote the public welfare.

Section 8 of Article 911b provides:

The Commission is hereby vested with power and authority, and it is hereby made its duty upon the filing of an application for a certificate of public convenience and necessity to ascertain and determine under such rules and regulations as it may promulgate, after considering existing transportation facilities, and the demand for, or need of additional service, if there exists a public necessity for such service, and if public convenience will be promoted by granting said application and permitting the operating of motor vehicles on the highways designated in such application as a common carrier for hire.

■ Continental and Union urge that the applicants must show more than public convenience; it must also establish public necessity. This, of course, is a correct statement of the law. *Railroad Commission v. Shupee*, 57 S.W.2d 295, 304 (Tex.Civ.App.— Austin, 1933), *aff'd*, 123 Tex. 521, 73 S.W.2d 505 (1934). *Shupee* has been expressly approved by this court in *Railroad Commission v. Metro Bus Lines*, 144 Tex. 420, 191 S.W.2d 10 at 10 (1946). The question that this court must answer is whether the findings of the Commission about convenience and necessity are reasonably supported by substantial evidence. *Auto Convoy Co. v. Railroad Commission*, 507 S.W.2d 718 (Tex. 1974).

There was extensive proof that a need existed for non-stop service, because the existing slower local service did not adequately serve the public. The findings of the Commission show that. The Lower Rio Grande Valley is a densely populated and rapidly growing area composed of the McAllen-Pharr-Edinburg Standard Metropolitan Statistical Area (SMSA) with a 1972 population of 199,500 and the Brownsville-Harlingen-San Benito SMSA with a 1972 population of 151,900. Across the Rio Grande are the more populous and faster growing Mexican cites of Reynosa and Matamoros. This region is isolated from other

populations and trade centers by the sparsely populated South Texas area. The northern terminus of the proposed route, San Antonio, is one of Texas' largest cities. From every economic, geographic, and cultural standpoint it is the major distribution, trade and travel center for goods, services, and people moving locally and in interstate and foreign commerce in southwest Texas.

Valley Transit is an experienced common carrier of passengers, baggage, newspapers and express. It provides the only local scheduled service in the Lower Valley connecting about twenty large municipalities and several smaller intermediate points. The proposed service would allow Valley Transit to fill the gap between its system and San Antonio, enabling it to compete effectively with Continental and Union. Valley Transit is solvent and able to maintain, modernize, and expand its equipment and to conduct the proposed operations. Valley Transit has established final agreements with Greyhound Lines West and Kerrville Bus Co. Inc., on proposed joint-line service between points on Valley Transit's routes and points on the concurring carrier's lines.

Greyhound's San Antonio district manager testified that local and non-stop service is necessary to serve the public properly between main population centers. Union provides no limited-stop or non-stop service over U.S. Highway 281 between San Antonio and Edinburg. Faster service can be provided by non-stop or limited-stop schedules than by local schedules. Valley Transit's proposed schedules would save from 35 minutes up to 1 hour and 10 minutes over Union's comparable schedules over U.S. Highway 281. Valley Transit's proposed schedules in coordinataion with Greyhound's would save between 1 hour and 25 minutes and 3 hours and 30 minutes in transit time from McAllen to Dallas.

Union is in a favorable financial situation. The average percentage of paying passengers on a coach in relation to capacity in 1973 was 42.7 percent on its San Antonio-Lower Valley route, the highest of any route it operated.

Twenty of the twenty-four SMAs in Texas are served by two or more intercity bus lines. McAllen-Pharr-Edinburg and Brownsville-Harlingen-San Benito which rank eighth and fourteenth among Texas SMSAs are served by only one intercity bus carrier. Together the two Lower Valley metropolitan areas are substantially larger than Lubbock and Bryan-College Station, the other two SMSAs connected by only one intercity bus company. The Lower Rio Grande Valley is no longer served by passenger trains. It is served on a limited basis by two airlines. There is only one daily same-aircraft flight between the Lower Rio Grande Valley and San Antonio. The high expense of air travel contributes to the low number of air travelers to and from the Lower Valley where the family income level is lower than in Texas as a whole.

A marketing expert testified to the soundness of the proposed service from a marketing and economic standpoint. The expert studied the character and growth of the territory, the market groups to be served by the proposed operation and economic, social, and cultural relationships between San Antonio and the Lower Rio Grande Valley.

Over 240 public witnesses, 130 of whom favored the proposed service, testified in the public hearings. Based on this testimony the examiner found that existing airline schedules to and from the Valley are infrequent, inconvenient and inadequate to meet the needs of many passengers. There are many passengers and potential passengers who hesitate or refuse to utilize the existing motor bus service offered by Union because of the great number of intermediate stops (up to seventeen stops) and the slower overall running time.

The proposed service is supported by the chambers of commerce of thirteen Valley cities, regional chambers of commerce and by the City Councils of Port Isabel and Hidalgo. Only the Brownsville Chamber of Commerce, of such organizations, supports the view of Continental and Union.

The examiner found that there is a definite need for a service offering faster, minimal-stop service at ordinary bus fare levels between the Valley and San Antonio throughout the day and night. He also found that many passengers need bus service which would allow Valley residents to make a round trip to and from San Antonio in one day. A same day round trip is virtually impossible with the Union schedules.

Passengers have suffered lost shipments and poor response to claims by Continental. The proposed service would improve motor bus package express transportation. Many shippers and receivers, particularly shippers of fragile commodities such as cut flowers, blood and tissue samples, and drugs, testified that the service of Union and Continental is inadequate.

Continental or Union did not complain that the examiner's findings are not clear and explicit, or that they are couched in terms other than as findings, or are mere conclusions, references to, recitals or summations of the evidence or are otherwise insufficient. They only challenge the findings on substantial evidence grounds. We have considered the evidence, taken as a whole, as we are required to do. *Alamo Express v. Union City Transfer*, 158 Tex. 234, 309 S.W.2d 815 (1958). Unquestionably, the opposing parties have offered conflicting evidence. A large group of public witnesses expressed support for the proposed service claiming they needed it and it would be more convenient for them. Another large group of public witnesses found Union's service adequate and even preferable to the proposed non-stop service. From our consideration of the public witness testimony and all other evidence adduced in the record, we conclude that there is substantial evidence reasonably supporting the Commission's order. If there is substantial evidence to support affirmative or negative findings, the order will be upheld, even though the Commission reached a decision contrary to that which the court might have reached. The correct test is whether the evidence as a whole is such that reasonable

minds could have reached the conclusion that the Commission reached. *Auto Convoy Co. v. Railroad Commission of Texas*, 507 S.W.2d 718 (Tex.1974). Based upon all the evidence we cannot say that the Railroad Commission acted arbitrarily and without regard to the facts.

### Jurisdiction

Valley Bus, Valley Transit and Railroad Commission urge that the trial court also erred in holding that the Railroad Commission had no jurisdiction to make its orders on August 6, 1975, granting the application of Valley Bus and in issuing the amended certificates on that date to Valley Bus. The argument is that the Railroad Commission lost all jurisdiction over this matter on May 21, 1975, when Continental and Union perfected their appeal to the trial court.

■ We hold that the Railroad Commission had not lost jurisdiction over Valley Bus, but that the appeal by Continental and Union was premature. The Railroad Commission had not yet acted on the application by Valley Bus at the time of the purported appeal.

The chronology is as follows. On April 25, 1975, the Commission acted on the applications made by Valley Transit. That party was only the lessee of Valley Bus. Valley Bus was the real party and the one whose certificates were the subject of the Railroad Commission hearing. The Railroad Commission on August 6, 1975, after notice and after compliance with the Open Meetings Law, Article 6252–17, acted upon and granted the applications for Valley Bus for the first time.

■ The rule is sound that the Railroad Commission may not change an order after it loses jurisdiction by an appeal. *Stewart v. Smith*, 126 Tex. 292, 83 S.W.2d 945 (1935); *Inman v. Railroad Commission*, 464 S.W.2d 895 (Tex.Civ.App.—Austin 1971, writ ref'd n. r. e.); *Smith v. Wald Transfer and Storage Co.*, 97 S.W.2d 991 (Tex.Civ. App.—Austin 1936, writ dism'd). That rule does not apply, when, as happened in this instance, the Commission has not yet acted upon the application from which an appeal is taken.

### Open Meetings

■ In their third point appellants, Valley Transit, Valley Bus, and the Railroad Commission, urge that the trial court erred in declaring the August 6, 1975 orders invalid for noncompliance with the open meetings law. The appellants concede that the notice under which the Commission acted on April 25, 1975 was insufficient, but contend the Commission acted on August 6, in full compliance with the open meetings law. The contestants, Continental and Union, challenged the Commission's jurisdiction to issue the August 6 orders. However, they do not challenge the sufficiency of the notice given in connection with the issuance of the August 6 orders on open meetings law grounds. Since we are not presented with any deficiency in the notice itself and in accordance with our holding that the Commission had jurisdiction to enter the August 6, 1975 orders, we sustain appellants' third point.

We reverse the judgment of the trial court and render judgment sustaining and confirming the Railroad Commission's August 6, 1975 orders.